IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER JUDGE, )<br>)<br>  Plaintiff )<br>)<br>  vs. )<br>)<br>MEDICAL DEPARTMENT AT SCI-GREENE, )<br>and ORGANIZATION WHICH HIGHERS )<br>[sic] MEDICAL STAFF; and SUPER- )<br>INTENDENT FOLINO, )<br>)<br>  Defendants )<br>) | Civil Action No. 05-1776<br><br>Judge Arthur J. Schwab/<br>Magistrate Judge Amy Reynolds Hay<br><br><br><br><br><br>Dkt. No. [21] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that Defendant Folino's motion for summary judgment be granted and that the court sua sponte grant summary judgment in favor of the Medical Department at SCI-Greene and the organization that hires medical staff.

REPORT

Roger Judge ("Plaintiff"), under sentence of death since 1987 for two murders he committed in Philadelphia, Commonwealth v. Judge, 797 A.2d 250 (Pa. 2002),[1] has filed a civil rights action against Louis Folino, the Superintendent of SCI-Greene, the prison where Plaintiff was incarcerated. In addition, Plaintiff named the Medical Department at SCI-Greene and the organization which hires medical staff there. In his civil rights complaint, filed pursuant to 42 U.S.C. § 1983, Plaintiff alleges that he has been denied treatment for "two mild strokes" which, for all of the medical records show, was apparently self diagnosed. He was also allegedly denied treatment for a broken foot and/or torn ligaments, as well as blocked blood vessels leading to his heart. He was also allegedly given wrong medicine once. He alleges that he has torn muscles in

---

[1] As recently as February 21, 2007, the Pennsylvania Supreme Court denied his second PCRA petition, treated as a state habeas petition. Commonwealth v. Judge, 916 A.2d 511 (Pa. 2007).

his right arm, and in his lower left side back.  Furthermore, he alleges that he has a hole in his heart from birth which needs to be medically addressed.  He claims that "all of these problems have not of date been address[ed] by proper testing, ect. [sic].  I still is [sic] in constant pain and need proper medical attentions [and a] private consultation."  Dkt. [9] at 3.  He claims that the foregoing has denied him his Eighth Amendment rights to be free of cruel and unusual punishment.

    A.  Relevant Procedural History

Defendant Folino, the only Defendant who has been served in this case, filed a motion for summary judgment, Dkt. [21], along with evidentiary materials attached, including Plaintiff's extensive medical records.  Plaintiff filed a "Letter and Application . . . Requesting Court to find in favor of Plaintiff," Dkt. [25], in which he indicated that after being tested in an outside hospital to which he was referred by the Medical Department at SCI-Greene, he was found to have problems with his stomach and esophagus.  The Court directed Defendant Folino to file a response to Plaintiff's motion.  Defendant Folino filed a response, Dkt. [27], to which he attached additional medical records that show Plaintiff underwent diagnostic tests called "Barium Swallow" and "Air Contrast Upper GI."  Those tests showed a "normal esophogram" and "Mild Gastroesophageal Reflux" Disease also known as GERD.  Plaintiff has been given Zantac to treat the GERD.  Id.  Plaintiff then filed his response to Defendant Folino's motion for summary judgment.  Dkt. [28].  Lastly, Plaintiff filed a "Letter and Motion to Amend," Dkt. [31], in which he seeks leave to amend his complaint, apparently to withdraw the Medical Department Defendants and the Organization which hires them because, the Marshals have been unable to effectuate service on such defendants.  Plaintiff did not attach a proposed amended complaint however to his motion.

**B. Standard of Review - Motion for Summary Judgment**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As the Supreme Court has explained,

> Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party "has the burden of showing there is no genuine issue of material fact, and once the moving party has sustained its burden, the opposing party must introduce specific evidence showing that there is a genuine issue for trial." Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989)(citing Celotex Corp., supra at 322-24).

Determining whether a material fact is "genuine" requires "an inquiry into 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). "Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., supra at 248.

### C. Discussion

#### 1. Eighth Amendment Standard

Plaintiff alleges that the Defendants violated his Eighth Amendment rights by being deliberately indifferent to his medical needs. The Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991). Accord Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000)("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components–one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."). The Court of Appeals for the Third Circuit has explained the objective element as requiring proof that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. . . . If not our inquiry is at an end." Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000), cert. denied, 531 U.S. 821 (2000). Only if the harm suffered is sufficiently serious does the court then turn to analyze the subjective element, which the Third Circuit has described as determining whether the prison "officials acted with a sufficiently culpable state of mind. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain." Id. (citations omitted).

As to the subjective component, in cases, such as this one, involving the alleged denial of medical care, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." Estelle, 429 U.S. 97, 104 (1976) (internal quotations omitted). The Court has held that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The plaintiff bears the burden of proof as to both the subjective and objective prongs.  See Pasha v. Barry, No. CIV.A. 96-466, 1996 WL 365408, at *1 (D.D.C.  June 21, 1996)("With respect to prevailing on an Eighth Amendment claim against defendant Adrienne Poteat, the warden at the CTF, the plaintiff bears the burden of demonstrating that his claims satisfy both the objective and subjective requirements. . .").

As a corollary of the deliberate indifference standard, mere negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06.  The Supreme Court has held that

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id.

### 2. Defendant Folino

Although Plaintiff names Defendant Folino in the caption of the complaint, he makes no factual allegations against Defendant Folino.  In his motion for summary judgment, Defendant Folino points out that he is the superintendent of SCI-Greene and not a physician.  Defendant Folino asserts that as a non-physician prison administrator, he cannot be deliberately indifferent to Plaintiff's medical needs in light of the fact that Plaintiff received extensive treatment at the hands of the medical staff, repeatedly undergoing diagnostic tests such as EKG's, x-rays, blood

tests, etc. In support of his motion for summary judgment, Defendant Folino attached Plaintiff's extensive medical records that support the fact that Plaintiff received frequent and ongoing health care at the hands of the medical staff at SCI-Greene. After most of the diagnostic tests returned as being normal or not clinically significant, the medical staff concluded that Plaintiff was engaged in "health seeking behavior," an apparent pattern of behavior wherein the patient seeks out health care although there is no underlying physical causation to the symptoms being experienced, which is also referred to in the record as "somatization". See, e.g., Dkt. [21-2] at 27 entry dated March 27, 2003. "Somatization disorder" is defined as "a chronic condition in which there are numerous physical complaints. These complaints can last for years, and result in substantial impairment. The physical symptoms are caused by psychological problems, and no underlying physical problem can be identified."[2]

    Defendant Folino is correct and he is entitled to summary judgment given the record establishes Plaintiff was under the care of medical personnel who provided diagnostic testing for Plaintiff which results showed no underlying physical problems.

    The rule is that where a prisoner is being treated by a physician, a non-physician prison administrator can not be deemed deliberately indifferent simply because the lay administrator did not challenge the physician's care or respond directly to a prisoner's requests for more or different treatment. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament. Neither of these defendants, however,

---

[2] The definition, of which this court takes judicial notice is found at the following website

    http://www.nlm.nih.gov/medlineplus/ency/article/000955.htm

(Site last visited 4/3/2007, the site is a service of the United States National Library of Medicine and the National Institutes of Health).

is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.")(footnoted omitted); Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001)("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.  Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor.")(internal citations and quotations omitted).  This rule makes sense because a non-physician layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner is being seen by and treated by physicians, notwithstanding the prisoner's complaints about the physician's treatments because a non-physician layperson has no expertise whereby to judge the adequacy *vel non* of a physician's treatment.  While Defendant Folino may have known that some of Plaintiff's complaints were not being treated because the medical staff determined they were psychological in origin, clearly, Defendant Folino had no expertise by which to question this medical determination and so the fact that some of Plaintiff's complaints may have gone untreated, simply could not support a jury finding of deliberate indifference on the part of Defendant Folino.

 In the face of the medical records documenting the treatment and diagnoses he did receive, the only response Plaintiff makes is that he is "a very sick person medically" and that "[i]n order for Plaintiff to prove his case, he will need those requested test[s]."  Dkt. [28] at 1. He seeks to have this court order an "MRI [and] ultrasound" so as to "check for medical illnesses claimed by Mr. Roger Judge."  Id.  However, he provides no authority which would enable this court to order such tests, that apparently have not been deemed required by medical professionals.  The only evidentiary materials he offered were articles from a newspaper called

7

"Prison Legal News" with articles dated October 1997 and May 2005 recounting experiences of prisoners in other states who suffered as a result of being denied medical treatment by Prison Health Services and/or Emergency Medical Associates.  Dkt. [28] at 28 - 31.   However, Plaintiff does not show how these articles are relevant to his situation occurring at SCI-Greene and the health department there.  Plaintiff's filings in opposition to Defendant Folino's motion for summary judgment do not create a genuine issue of material fact as to Defendant Folino.  At the very least, Plaintiff has not adduced any evidence that Defendant Folino possessed the requisite subjective mindset so as to make out an Eighth Amendment claim.  For all the record shows, Defendant Folino reasonably understood that Plaintiff was being examined and tested by the medical staff and that he could have reasonably relied on their assessment of Plaintiff as having somatization disorder.  Accordingly, summary judgment should be entered in favor of Defendant Folino.

### 3. Medical Department Defendants

Even though only Defendant Folino moved for summary judgment, the Court may sua sponte enter summary judgment for the Medical Department Defendants and the organization that hires them (hereinafter, collectively referred to as the "Medical Department Defendants") so long as Plaintiff has notice and an opportunity to respond.  Canell v. Bradshaw, 97 F.3d 1458, at **5 (Table, Text available in Westlaw)(9th Cir. 1996)("A district court may grant summary judgment to a non-moving party sua sponte so long as the other party has had an adequate opportunity to address the relevant issues.").  See also Celotex, 477 U.S. at 326 ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."). Here, the report provides Plaintiff with notice, and the opportunity to file objections provides him with the opportunity to be heard.  Magouirk v.

Phillips, 144 F.3d 348, 359 (5th Cir. 1998) ("Here, the Magistrate Judge's Memorandum and Recommendation placed Magouirk on notice that procedural default was a potentially dispositive issue with respect to three of his claims. Magouirk responded to the Magistrate Judge's sua sponte invocation of procedural default within the ten-day time period allowed for filing objections to the report. Thus, Magouirk was afforded both notice and a reasonable opportunity to oppose application of the procedural default doctrine in the district court."); Canady v. Baker, 142 F.3d 432 (Table), 1998 WL 123996, *1 (6th Cir. 1998)(same).

     Instantly, the record is devoid of evidence showing that the Medical Department Defendants actually denied Plaintiff treatment for any diagnosable condition. In fact, after many diagnostic tests were administered, including at least 4 EKGs all of which were normal (done on 8/26/05 Dkt. [21-2] at 6; EKG performed 5/10/04 normal, id. at 11; 3/10/04 EKG completed, id. at 20; 3/14/03 EKG performed/completed and found to be normal, id. at 28), as well as numerous x-rays (dkt. [21-5] at 4 - 14; 1/3/05 recently completed x-ray of chest and L/S spine results were normal, Dkt. [21-2] at 12; 5/10/05 x-ray apparently of foot, reviewed showing possible "old avulsed fragment lateral talus", id. at 10), and multiple and frequent examinations of Plaintiff, the record demonstrates that Plaintiff was not denied medical treatment for any condition that was diagnosed by the medical staff. Hence, Plaintiff has not met his burden to show that he was denied medical treatment for a serious medical condition, i.e., to show a genuine issue of material fact with respect to the objective component of his Eighth Amendment claim.

     Even if we were to assume that he was wrongly denied treatment, and the objective component of the Eighth Amendment were met, still, the Medical Department Defendants would be entitled to summary judgment because on this record there simply is no evidence to support that they possessed the requisite mindset so as to establish an Eighth Amendment violation. The

medical records repeatedly show that the medical personnel determined that Plaintiff's complaints were "health seeking behavior" (Dkt. [21-2] at 12, 13, 21, 24 - 31, 33 & 34), or "psychosomatic symptoms" (Dkt. [21-2] at 23) or "somatization disorder" (Dkt. [21-2] at 26, 27).  These all indicate that the medical department actually believed Plaintiff's complaints to all be psychological in origin and hence that he was not suffering from any serious medical illness.

In other words, the medical records establish that the Medical Department Defendants did not know of and disregard an excessive risk to Plaintiff's health and safety; they were neither aware of facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff and they did not draw such an inference.  Indeed, the medical records establish that the facts which the Medical Department Defendants were aware of lead them to conclude that Plaintiff was engaged in health seeking behavior or experiencing psychosomatic symptoms.[3]  Such an exercise of informed professional judgment fails to establish the subjective element necessary for an Eighth Amendment violation.  See, e.g., Toler v. New, 989 F.2d 505 (Table), 1993 WL 87011, *1 (8th Cir. March 29, 1993) ("Shearin was entitled to summary judgment on this claim, however, because Toler did not offer any evidence to controvert Shearin's attestations that Toler often feigned illness to get attention"); Ammons v. Altergot, 968 F.2d 1218 (Table), 1992 WL 157551, *3 (7th Cir. July 8, 1992)(Nurse "Altergot's belief that Ammons was malingering if honest but erroneous, while crass and unprofessional, would not amount to the deliberate or even reckless infliction of punishment and so would not be actionable under the Constitution.")(some internal quotations omitted); Price v. Cooper, NO. 94 C 5142, 1996 WL 467242, *3 (N.D.Ill. Aug. 12, 1996)("If medical personnel do not respond to complaints of pain, they are not liable if they honestly believed the inmate was malingering.").  This rule is simply an

---

[3] Dr. Falor did request a psychiatric consult, Dkt. [21-6] at 2, having Dr. Khan sit in with Dr. Falor and Plaintiff.  However, Plaintiff refused to be seen by a psychiatrist and undergo a psychiatric evaluation.  Dkt. [21-6] at 3.

application of the Estelle principle that more than negligence is needed to make out an Eighth Amendment claim.  Hence, even if Dr. Falor and the Medical Department Defendants negligently came to their conclusions that Plaintiff was merely engaged in health seeking behavior or that the origins of his complaints were psychosomatic and so did not require medical care, and even if such a medical judgment were wrong (but the medical records do not support a conclusion that such medical judgment was in fact wrong), such a negligent diagnosis would not establish the requisite subjective component of an Eighth Amendment claim.  See Estelle, at 106 (claim that a physician has been "negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").  Plaintiff has simply failed to proffer any evidentiary material to create a genuine issue of fact as to the subjective component of the Eighth Amendment test as is his burden.  See Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001)("the plaintiff bears the onerous burden of proving the official's subjective knowledge").  Accordingly, the Medical Department Defendants are entitled to summary judgment as well.

Moreover, the record establishes that whenever Plaintiff's complaints were medically significant, the medical department did not hesitate to order appropriate tests, such as with Plaintiff's complaints of difficulty swallowing which caused medical personnel to order the Barium swallow test and the "Air Contrast Upper GI" test which resulted in the diagnosis of GERD and its subsequent treatment.[4]

CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written

---

[4] If the District Court adopts the report, Plaintiff's letter motion to amend the complaint, Dkt. [31], apparently to add named Medical Staff personnel, etc., may be dismissed as moot.

objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

> /s/  *Amy Reynolds Hay*
> AMY REYNOLDS HAY
> United States Magistrate Judge

Dated: 4 April, 2007

cc: The Honorable Arthur J. Schwab
    United States District Judge

    Roger Judge
    DT-6550
    SCI Greene
    175 Progress Drive
    Waynesburg, PA 15370

    Scott A. Bradley, Esquire by Notice of Electronic Filing